Stephen H.M. Bloch #7813
SOUTHERN UTAH WILDERNESS ALLIANCE
425 East 100 South
Salt Lake City, UT  84111
Telephone:  (801) 486-3161

FILED
U.S DISTRICT COURT

2007 APR -2  P  3: 43

Sharon Buccino DC # 432073 (pro hac vice filed concurrently)
NATURAL RESOURCES DEFENSE COUNCIL
1200 New York Ave. NW Suite 400
Washington, D.C. 20005
Telephone:  (202) 289-6868

Attorneys for Plaintiffs
Southern Utah Wilderness Alliance et al.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, NATURAL RESOURCES DEFENSE COUNCIL, THE WILDERNESS SOCIETY, NATIONAL PARKS CONSERVATION ASSOCIATION, and the GRAND CANYON TRUST, <br><br> Plaintiffs, <br><br> vs. <br><br> SELMA SIERRA, in her official capacity as Director of the Bureau of Land Management Utah State Office, the BUREAU OF LAND MANAGEMENT, and the UNITED STATES DEPARTMENT OF THE INTERIOR, <br><br> Defendants. | Judge Dale A. Kimball <br> DECK TYPE: Civil <br> DATE STAMP: 04/02/2007 @ 14:35:10 <br> CASE NUMBER:  2:07CV00199  DAK |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.  This suit challenges the October 2006 and January 2007 decisions by the Bureau of Land

Management and the Department of the Interior (collectively referred to as "BLM") to illegally

retroactively suspend and effectively issue 23 new oil and gas leases on approximately 38,000

acres of some of the nation's most spectacular BLM and Park Service managed public lands, including lands in the Grand Staircase-Escalante National Monument, the Fiddler Butte wilderness study area, the French Spring-Happy Canyon wilderness study area, and the Glen Canyon National Recreation Area.

2.   The Grand Staircase-Escalante National Monument and Fiddler Butte and French Spring-Happy Canyon wilderness study areas are public lands that Congress and President Clinton declared off-limits to new oil and gas leasing in order to protect their unique and important natural, historical, and geological features from oil and gas development.

3.   Conventional oil and gas or tar sands development in these remarkable landscapes will have dramatic, lasting negative impacts including destruction of pre-historic and historic cultural resources, degradation of air quality and pristine night skies, loss of wildlife habitat, and loss of wilderness values and characteristics.

4.   Overall, the sight and sound of heavy industrialized activity authorized by the subject leases will mar these spectacular public lands for generations.

## JURISDICTION AND VENUE

5.   This court has jurisdiction over this action pursuant to the Mineral Leasing Act, 30 U.S.C. §§ 181 et seq. and its implementing regulations; the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. §§ 1701 et seq. and its implementing regulations; the Antiquities Act, 16 U.S.C. §§ 431 et seq.; President Clinton's proclamation establishing the Grand Staircase-Escalante National Monument, 61 Fed. Reg. 50,223 (1996); the Department of the Interior, Environment, and Related Agencies Appropriations Act, Public Law No. 109-54 § 417, 119 Stat. 499 (2005); the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq. and its implementing regulations; the Declaratory Judgment Act, 28 U.S.C. § 2201; the Administrative Procedure Act (APA); 5 U.S.C. §§ 551 et seq.; and 28 U.S.C. § 1331 (federal question).

6.  Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

7.  Venue is proper in the Central Division of the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391(e) because the statutory violations alleged herein all occurred within the State of Utah.

## PARTIES

8.  Plaintiff SOUTHERN UTAH WILDERNESS ALLIANCE (SUWA) is a non-profit environmental membership organization dedicated to the sensible management of public lands within the State of Utah, to the preservation and protection of plant and animal species, and to the preservation of Utah's remaining wild lands. SUWA has offices in Utah and in Washington, D.C. SUWA has members in all fifty states and several foreign countries. SUWA members use and enjoy public lands in and throughout Utah for a variety of purposes, including scientific study, recreation, hunting, aesthetic appreciation, and financial livelihood. SUWA members frequently visit and recreate (e.g., hunt, camp, bird, sightsee, and enjoy solitude) throughout the lands that are the subject of this complaint, including the Grand Staircase-Escalante National Monument, the Glen Canyon National Recreation Area, Fiddler Butte wilderness study area, and French Spring-Happy Canyon wilderness study area. SUWA members have a substantial interest in this matter – they have suffered real and immediate harm by the BLM's decision to retroactively suspend oil and gas leases, as alleged below. BLM's decision effectively issues new oil and gas leases in landscapes set aside for protection from such activities and authorizes some level of surface disturbance on the leasehold. This inevitable surface disturbance harms the interest of SUWA and its members in the leased lands. SUWA members also have a substantial interest in seeing that the BLM complies with the terms and requirements of President Clinton's proclamation establishing the Grand Staircase-Escalante National Monument and Congress' prohibition on

3

leasing in national monuments. SUWA brings this action on its own behalf and on behalf of its adversely affected members.

9. Plaintiff NATURAL RESOURCES DEFENSE COUNCIL (NRDC) is a non-profit environmental membership organization with more than 400,000 members throughout the United States. NRDC members use and enjoy public lands in and throughout Utah, including the specific lands at issue, for a variety of purposes, including: recreation, solitude, scientific study, and aesthetic appreciation. NRDC members are directly harmed by BLM's decision to issue the challenged new leases. NRDC has a longstanding and active interest in the protection of public lands in Utah. With its nationwide membership and a staff of lawyers, scientists, and other environmental specialists, NRDC plays a leading role in a diverse range of land and wildlife management and resource development issues. Over the years, NRDC has participated in a number of court cases involving resource development issues, including Antiquities Act compliance, throughout the American West and including Utah. NRDC brings this action on its own behalf and on behalf of its members.

10. Plaintiff THE WILDERNESS SOCIETY (TWS) is a non-profit national leadership organization founded in 1935. TWS works to protect America's wilderness and to develop a network of wild lands, through public education, scientific analysis, and advocacy. TWS's goal is to ensure that future generations will enjoy the clean air, water, wildlife, beauty, and opportunities for recreation and renewal that pristine deserts, mountains, forests and rivers provide. TWS views protecting wilderness quality and other sensitive BLM and National Park Service managed lands in Utah as vital to achieving its mission. TWS has worked for years to protect BLM wilderness quality and other sensitive lands in Utah. Wilderness Society members use the public lands at issue in this case, including the Grand Staircase-Escalante National Monument, Fiddler Butte and French Spring-Happy Canyon wilderness study areas, and the Glen Canyon National Recreation

4

Area for a variety of purposes, including recreation and aesthetic appreciation, and are directly harmed by BLM's decision to issue the new leases at issue here in violation of a myriad of federal laws and regulations, including the Antiquities Act and the Mineral Leasing Act. TWS brings this action on its own behalf and on behalf of its members.

11. Plaintiff NATIONAL PARKS CONSERVATION ASSOCIATION (NPCA) is a non-profit national organization whose primary mission is to address major threats facing the National Park System. NPCA is the leading voice of the American people in protecting and enhancing the National Park System and has more than 325,000 members throughout the United States, with over 2,000 in Utah. NPCA plays a crucial role in ensuring that America's national parks are protected in perpetuity by undertaking a variety of efforts, including: advocating for the parks and the National Park Service, educating decision-makers and the public about the importance of preserving the parks, lobbying members of Congress to uphold the laws that protect the parks and in support of new legislation to address threats to the parks, and assessing the health of the parks and park management to better inform NPCA's members and the general public about the state of the park system. NPCA members use and enjoy the public lands at issue in this case in the Glen Canyon National Recreation Area (which is managed by the National Park Service), as well as the Grand Staircase-Escalante National Monument and the Fiddler Butte and French Spring-Happy Canyon wilderness study areas for a variety of purposes, including recreation, sightseeing and aesthetic appreciation. NPCA members are directly harmed by BLM's decision to deem suspended and effectively issue new oil and gas leases in the Glen Canyon National Recreation Area, as well as the Grand Staircase-Escalante National Monument and the Fiddler Butte and French Spring-Happy Canyon wilderness study areas. NPCA brings this action on its own behalf and on behalf of its members.

12. Plaintiff GRAND CANYON TRUST (Trust) is a non-profit conservation organization that advocates for sensible solutions to resource management problems on the Colorado Plateau. The Trust has worked since its inception in 1985 to protect and restore the spectacular landscapes, flowing rivers, clean air, diversity of plants and animals, and areas of beauty and solitude that characterize the Colorado Plateau. The Trust has offices in Flagstaff, Arizona and Moab, Utah. The Trust has members nationwide. Trust members and staff use and enjoy public lands throughout the Colorado Plateau region, including lands in central and southern Utah. Trust members frequently visit, sightsee, and recreate in, enjoy the solitude of, and appreciate the aesthetic beauty and wonder of, the geographic areas implicated by this complaint, including the Grand-Staircase Escalante National Monument, the Glen Canyon National Recreation Area, French Spring-Happy Canyon wilderness study area, and Fiddler Butte wilderness study area. Trust members are directly harmed by BLM's decision to retroactively suspend various oil and gas leases in the aforementioned areas. Trust members are harmed by BLM's decision to retroactively suspend those oil and gas leases in violation of numerous federal laws and regulations, including the Mineral Leasing Act, the Antiquities Act, the National Environmental Policy Act, the Congressional prohibition on oil and gas leasing in national monuments, and the proclamation establishing Grand Staircase-Escalante National Monument. The Trust brings this suit on its own behalf and on behalf of its members.

13. Defendant SELMA SIERRA is sued in her official capacity as Director of the Utah state office of the Bureau of Land Management. In that capacity she is responsible for overseeing the management of all Utah BLM decision making, including Utah BLM's solid minerals program that made the decisions at issue in this case. Director Sierra is also responsible for ensuring that Utah BLM decisions comply with all applicable laws and regulations, including the Mineral Leasing Act, FLPMA, NEPA, and the Antiquities Act.

14. Defendant BUREAU OF LAND MANAGEMENT (BLM) is the agency within the U.S. Department of the Interior directly responsible for carrying out the Department's obligations under statutes and regulations governing oil and gas exploration, leasing, and development, and for complying with the Mineral Leasing Act, FLPMA, NEPA, and the Antiquities Act. The BLM manages approximately 23 million acres in Utah.

15. Defendant UNITED STATES DEPARTMENT OF THE INTERIOR is the federal agency responsible for managing just under 500 million acres of federal public lands for a variety of competing resources, including oil and gas development, as well as for the protection of the natural and human environment. The Department of the Interior is required to comply with the Mineral Leasing Act and NEPA, among other federal statutes.

**FACTS GIVING RISE TO PLAINTIFFS' CAUSES OF ACTION**

16. In the early 1980s, several individuals and companies sought to convert – per the Combined Hydrocarbon Leasing Act and its implementing regulations – then valid conventional oil and gas leases into combined hydrocarbon leases (CHLs). If converted, the CHLs would authorize the lessees to develop conventional oil and gas and tar sands resources on the leaseholds.

17. In 1982-83, Utah BLM determined that five conversion applications and their accompanying plans of operations submitted for tens of thousands of acres in the Circle Cliffs special tar sands area (Circle Cliffs STSA) and the Tar Sands Triangle special tar sands area (Tar Sands Triangle STSA) were administratively complete.

18. The Circle Cliffs STSA is comprised entirely of public lands within the Grand Staircase-Escalante National Monument.

19. The Tar Sands Triangle is comprised primarily of public and state lands within the Fiddler Butte and French Spring-Happy Canyon wilderness study areas and the Glen Canyon National Recreation Area.

20. The Combined Hydrocarbon Leasing Act's regulations state that once BLM determined that these five applications' plans of operation were administratively complete, the agency should have suspended the underlying conventional oil and gas leases until the plans of operation were approved or rejected.

21. BLM did not suspend the 23 conventional oil and gas leases at issue in this action that underlie the five conversion applications in the Circle Cliffs STSA and Tar Sands Triangle STSA for which the agency had deemed the plan of operations to be administratively complete.

22. The Combined Hydrocarbon Leasing Act's regulations provide that BLM had 15 months to either approve or reject the proposed plans of operation from the date that the agency first received those plans.

23. Utah BLM has neither approved nor rejected the five conversion applications discussed infra in paragraphs 24-28 that it received in the 1980s for proposed plans of operation in the Circle Cliffs STSA and Tar Sands Triangle STSA.

24. The following eight conventional oil and gas leases comprising in-part serialized application UTU 72120 (William C. Kirkwood) expired on or before December 31, 1989: U-25855, U-27491, U-28169, U-28919, U-37312, U-37315, U-37317, and U-43694.

25. The following five conventional oil and gas leases comprising serialized application UTU 72405 (William C. Kirkwood) expired on or before December 31, 1984: U-21036, U-21106, U-21488, U-21489, and U-24444.

26. The following conventional oil and gas lease comprising in-part serialized application UTU 71309 (Benson-Montin-Greer Drilling Corporation) expired on or before December 31, 1982: U-20860.

27. The following eight conventional oil and gas leases comprising in-part serialized application UTU 73098 (William C. Kirkwood) expired on or before December 31, 1992: U-21473, U-21474, U-21475, U-21476, U-21477, U-21478, U-21479, and U-30095.

28. The following conventional oil and gas lease comprising serialized application UTU 21085 (Devon Energy Corporation) expired on or before December 31, 1991: U-21085.

29. In the mid-1980s, Utah BLM prepared draft environmental impact statements and related environmental and socio-economic studies for tar sands development in the Circle Cliffs STSA and Tar Sands Triangle STSA.

30. Utah BLM never issued final environmental impact statements and records of decision for tar sands development in the Circle Cliffs STSA and Tar Sands Triangle STSA.

31. Utah BLM has neither formally accepted nor rejected the plans of operations that it deemed administratively complete for serialized lease applications UTU 72120, UTU 72405, UTU 71309, UTU 73098, and UTU 21085.

32. On January 29, 2007 BLM's Utah state office issued a decision regarding serialized lease application UTU 72120 in which the agency deemed the following eight conventional oil and gas leases suspended as of August 8, 1983: U-25855, U-27491, U-28169, U-28919, U-37312, U-37315, U-37317, and U-43694. These eight leases are located in the Circle Cliffs STSA.

33. On January 29, 2007 BLM's Utah state office issued a decision regarding serialized lease application UTU 72405 in which the agency deemed the following five conventional oil and gas leases suspended as of July 19, 1983: U-21036, U-21106, U-21488, U-21489, and U-24444. These five leases are located in the Tar Sands Triangle STSA.

9

34. On January 29, 2007 BLM's Utah state office issued a decision regarding serialized lease application UTU 71309 in which the agency deemed the following conventional oil and gas lease suspended as of August 5, 1983: U-20860. This lease is located in the Tar Sands Triangle STSA.

35. On October 3, 2006 BLM's Utah state office issued a decision regarding serialized lease application UTU 73098 in which the agency deemed the following eight conventional oil and gas leases suspended as of November 29, 1983: U-21473, U-21474, U-21475, U-21476, U-21477, U-21478, U-21479, and U-30095. These eight leases are located in the Tar Sands Triangle STSA.

36. On October 3, 2006 BLM's Utah state office issued a decision regarding serialized lease application UTU 21085 in which the agency deemed the following conventional oil and gas lease suspended as of July 19, 1983: U-21085. This lease is located in the Tar Sands Triangle STSA.

37. All told, Utah BLM's state office deemed suspended 23 conventional oil and gas leases totaling approximately 38,000 acres in the Grand Staircase-Escalante National Monument, Fiddler Butte and French Spring-Happy Canyon wilderness study areas, and Glen Canyon National Recreation Area.

38. In BLM's October 2006 and January 2007 decisions, the agency stated that it would require payment of seven years worth of outstanding rental payments before proceeding with further processing of serialized lease applications UTU 72120, UTU 72405, UTU 71309, UTU 73098, and UTU 21085.

## FIRST CAUSE OF ACTION
### Violation of the Mineral Leasing Act and its Implementing Regulations

39. Plaintiffs incorporate herein by reference paragraphs 1-38 above.

40. The Mineral Leasing Act's implementing regulations provide that "an application for suspension" of a conventional oil and gas lease "shall be filed with the authorized officer prior to

10

the expiration date of the lease . . . and shall include a full statement of the circumstances that makes such relief necessary." 43 C.F.R. § 3165.1(b).

41. BLM may retroactively suspend a conventional oil and gas lease only if a suspension application was filed for that particular lease before the lease expired. 40 C.F.R. § 3165.1(b).

42. The Combined Hydrocarbon Leasing Act's implementing regulations provide that "[u]pon determination that [a] plan of operations is completed, the authorized officer shall suspend the term of the [conventional] oil and gas lease(s) as of the date that the complete plan [of operations] was filed until the plan is finally approved." 43 C.F.R. § 3140.2-3(g)(1).

43. In 1983-84, BLM determined that complete plans of operation had been submitted for the following five serialized combined hydrocarbon lease applications: UTU 72120, UTU 72405, UTU 71309, UTU 73098, and UTU 21085.

44. In 1983-84, BLM did not suspend the following 23 conventional oil and gas leases following the agency's determination that complete plans of operations had been submitted for developing tar sands resources on these leases: U-21473, U-21474, U-21475, U-21476, U-21477, U-21478, U-21479, U-30095, U-25855, U-27491, U-28169, U-28919, U-37312, U-37315, U-37317, U-43694, U-21036, U-21106, U-21488, U-21489, U-24444, U-20860, and U-21085.

45. It was not until 2006-07 that BLM deemed the following 23 leases suspended as of the date that plans of operation for tar sands development were determined to be complete: U-21473, U-21474, U-21475, U-21476, U-21477, U-21478, U-21479, U-30095, U-25855, U-27491, U-28169, U-28919, U-37312, U-37315, U-37317, U-43694, U-21036, U-21106, U-21488, U-21489, U-24444, U-20860, and U-21085.

46. The following 23 conventional oil and gas leases expired between 1983 and 1993: U-21473, U-21474, U-21475, U-21476, U-21477, U-21478, U-21479, U-30095, U-25855, U-27491,

U-28169, U-28919, U-37312, U-37315, U-37317, U-43694, U-21036, U-21106, U-21488, U-21489, U-24444, U-20860, and U-21085.

47. BLM did not receive suspension applications for any of the following 23 conventional oil and gas leases prior to their expiration: U-21473, U-21474, U-21475, U-21476, U-21477, U-21478, U-21479, U-30095, U-25855, U-27491, U-28169, U-28919, U-37312, U-37315, U-37317, U-43694, U-21036, U-21106, U-21488, U-21489, U-24444, U-20860, and U-21085.

48. BLM did not receive petitions for reinstatement regarding any of the following 23 conventional oil and gas leases following their expiration: U-21473, U-21474, U-21475, U-21476, U-21477, U-21478, U-21479, U-30095, U-25855, U-27491, U-28169, U-28919, U-37312, U-37315, U-37317, U-43694, U-21036, U-21106, U-21488, U-21489, U-24444, U-20860, and U-21085.

49. BLM's decision to deem the 23 conventional oil and gas leases described supra in paragraph 48 suspended – after they expired – was arbitrary, capricious, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A).

### SECOND CAUSE OF ACTION
**Violation of the Antiquities Act and Congressional Moratorium on Leasing in Monuments**

50. Plaintiffs incorporate herein by reference paragraphs 1-49 above.

51. The Antiquities Act of 1906 provides that the President is authorized to declare national monuments and "may reserve as a part thereof parcels of land." 16 U.S.C. § 431.

52. In 1996, President Clinton established the Grand Staircase-Escalante National Monument and specifically withdrew the lands therein from mineral leasing: "All federal lands and interests in lands within the boundaries of this monument are hereby appropriated and withdrawn from . . . leasing, or other disposition under the public land laws." 61 Fed. Reg. 50,223, 50,255 (1996).

12

53. In 2005, the Congress further cemented this leasing prohibition by approving a funding moratorium for mineral leasing in national monuments. Pub. L. No. 109-54 § 417, 119 Stat. 499 (2005).

54. The BLM's decision to deem suspended the following eight long expired leases in the Grand Staircase-Escalante National Monument is the equivalent to issuing new mineral leases, which is specifically prohibited by President Clinton's proclamation establishing the Grand Staircase-Escalante National Monument and the 2005 congressional moratorium on leasing in national monuments: U-25855, U-27491, U-28169, U-28919, U-37312, U-37315, U-37317, and U-43694.

55. Accordingly, the BLM has violated the Antiquities Act, President Clinton's proclamation establishing the Grand Staircase-Escalante National Monument, and the congressional prohibition on new mineral leasing in national monuments, and has acted arbitrarily, capriciously, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A).

### THIRD CAUSE OF ACTION
### Violation of the Mineral Leasing Act and Its Implementing Regulations

56. Plaintiffs incorporate herein by reference paragraphs 1-55 above.

57. The Mineral Leasing Act's implementing regulations prohibit new mineral leasing in BLM designated wilderness study areas. 43 C.F.R. § 3100.0-3(a)(2)(viii).

58. The BLM's decision to deem suspended the long expired leases in the Fiddler Butte and French Spring-Happy Canyon wilderness study areas is the equivalent to the issuance of new mineral leases which is specifically prohibited by the Mineral Leasing Act's implementing regulations.

59. Accordingly, BLM has violated the Mineral Leasing Act and its implementing regulations and has acted arbitrarily, capriciously, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A).

## FOURTH CAUSE OF ACTION
### Violation of the Mineral Leasing Act and Its Implementing Regulations

60. Plaintiffs incorporate herein by reference paragraphs 1-59 above.

61. The Mineral Leasing Act's implementing regulations prohibit new mineral leasing in National Park Service units without specific findings by the Secretary of the Interior "that such disposition would not have significant adverse effects on the administration of the area and if lease operations can be conducted in manner that will preserve the scenic, scientific, and historic features contributing to public enjoyment of the area."  43 C.F.R. § 3100.0-3(g)(4).

62. The Mineral Leasing Act's implementing regulations permit mineral leasing in National Park Service units "only with the consent of the Regional Director, National Park Service."  43 C.F.R. § 3109.2.

63. The BLM's decision to deem suspended the long expired leases in the Glen Canyon National Recreation Area is the equivalent to the issuance of new mineral leases.

64. The BLM did not seek consent of the Regional Director, National Park Service prior to BLM's decisions in October 2006 and January 2007 to "deem suspended" the leases at issue in this complaint within the Glen Canyon National Recreation Area.

65. The Regional Director, National Park Service did not consent to the issuance of new mineral leases by BLM in October 2006 and February 2007 in the Glen Canyon National Recreation Area .

66.  Accordingly, BLM has violated the Mineral Leasing Act and its implementing regulations and has acted arbitrarily, capriciously, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A).

### FIFTH CAUSE OF ACTION
**Violation of the National Environmental Policy Act and Its Implementing Regulations**

67.  Plaintiffs incorporate herein by reference paragraphs 1-xx above.

68.  NEPA requires that federal agencies evaluate the environmental effects of their actions prior to the point of irreversible and irretrievable commitment.  42 U.S.C. § 4332.  The issuance of oil and gas leases constitutes the point of an irreversible commitment in the BLM's fluid mineral leasing program.  BLM Manual H-1624-1, Planning for Fluid Mineral Resources, Chapter I(B)(2).

69. NEPA further directs federal agencies to prepare an environmental impact statement (EIS) on a proposed major action that may have significant environmental impacts to "insure that presently unquantified environmental amenities and values may be given appropriate consideration in decisionmaking." 42 U.S.C. §§ 4332(2)(B) & (C).  *See* 40 C.F.R. Part 1502.  The EIS must take a "hard look" at the environmental effects of the proposed action.

70. If an agency is uncertain whether an EIS should be prepared, NEPA's implementing regulations permit it to prepare an environmental assessment (EA) to determine whether an EIS is necessary.  40 C.F.R. §§ 1501.4, 1508.9.  The EA must provide sufficient evidence and analysis for determining whether to prepare an EIS, or to support a finding of no significant impact (FONSI).  40 C.F.R. § 1508.9.

71. The development of tar sands in the Circle Cliffs STSA and Tar Sands Triangle STSA was not analyzed under the previously prepared NEPA analyses in place at the time of issuance of the 23 conventional oil and gas leases described <u>supra</u> in paragraph 44.

72. The BLM's decision to deem suspended the long-expired leases in the Circle Cliffs STSA and Tar Sands Triangle STSA is the equivalent to the issuance of new mineral leases.

73. The issuance of leases is an irretrievable commitment of resources for which an adequate pre-leasing NEPA analysis must be prepared.

74. NEPA required the BLM to prepare an analysis of the environmental impacts of tar sands development prior to authorizing development and/or issuing leases in the Circle Cliffs STSA and Tar Sands Triangle STSA.  40 C.F.R. § 1501.2.

75. The BLM did not complete the necessary pre-leasing NEPA analyses for tar sands development in the Circle Cliffs STSA and Tar Sands Triangle STSA

76. Accordingly, BLM has violated the National Environmental Policy Act and its implementing regulations and has acted arbitrarily, capriciously, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

Wherefore, plaintiffs respectfully pray that this Court enter judgment in their favor and against defendants Selma Sierra, the Bureau of Land Management, and the Department of the Interior, and that the Court:

(1)     Declare that defendants have violated the Mineral Leasing Act; the Antiquities Act; President Clinton's proclamation establishing the Monument; the Department of the Interior, Environment, and Related Agencies Appropriations Act, Pub. L. No. 109-54 § 417, 119 Stat. 499 (2005); the National Environmental Policy Act; and applicable implementing regulations as set forth above; and

(2)     Declare that defendants deemed the following 23 leases suspended in violation of the Mineral Leasing Act and its implementing regulations: U-21473, U-21474, U-21475, U-21476, U-21477, U-21478, U-21479, U-30095, U-25855, U-27491, U-28169, U-28919, U-37312,

16

U-37315, U-37317, U-43694, U-21036, U-21106, U-21488, U-21489, U-24444, U-20860, and U-21085; and

(3)     Declare that defendants deemed the following 8 leases suspended in violation of the Antiquities Act, President Clinton's proclamation establishing the Grand Staircase-Escalante National Monument, and the Congress' prohibition on new mineral leasing in national monuments: U-25855, U-27491, U-28169, U-28919, U-37312, U-37315, U-37317, and U-43694; and

(4)     Declare that defendants deemed leases suspended in violation of the Mineral Leasing Act and its implementing regulations that prohibit new mineral leasing in designated wilderness study areas; and

(5)     Declare that defendants deemed leases suspended in violation of the Mineral Leasing Act and its implementing regulations that prohibit new mineral leasing in National Park Service units without consent of the National Park Service; and

(6)     Declare that defendants deemed leases suspended in violation of the National Environmental Policy Act and its implementing regulations; and

(7)     Award injunctive relief directing defendants to rescind their decisions that deemed the following 23 leases suspended: U-21473, U-21474, U-21475, U-21476, U-21477, U-21478, U-21479, U-30095, U-25855, U-27491, U-28169, U-28919, U-37312, U-37315, U-37317, U-43694, U-21036, U-21106, U-21488, U-21489, U-24444, U-20860, and U-21085, and prohibiting the defendant agency BLM from retroactively suspending or deeming suspended these leases in the Grand Staircase-Escalante National Monument, Fiddler Butte and French Spring-Happy Canyon wilderness study areas, and the Glen Canyon National Recreation Area; and

(8)     Retain jurisdiction of this action to ensure compliance with its decree; and

(9)     Award plaintiffs the costs they have incurred in pursuing this action, including

attorneys' fees, as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other

applicable provisions; and

(10)    Grant such other and further relief as is proper.

Dated: April 2, 2007

Respectfully submitted,

Stephen Bloch
Southern Utah Wilderness Alliance

Sharon Buccino
Natural Resources Defense Council

Attorneys for Plaintiffs
Southern Utah Wilderness Alliance et al.

18

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Southern Utah Wilderness Alliance, Natural Resources Def. Council, Wilderness Soc'y, National Parks Cons. Assoc, Grand Canyon Trust

**(b)** County of Residence of First Listed Plaintiff     Salt Lake
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Stephen Bloch, SUWA, 425 East 100 South, SLC, UT 84111 (801) 486-3161

## DEFENDANTS

Selma Sierra, in her official capacity as Director of the Bureau of Land Management Utah State Office, Bureau of Land Management,

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

Office of the US Attorney, 185 South State St. # 400 , SLC, UT 84111

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☒ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Mineral Leasing Act, 30 USC 181 et seq, Antiquities Act, 16 USC 431 et seq, Administrative Procedure Act

Brief description of cause:
Challenge to BLM's decision to deem suspended oil and gas leases

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE                      DOCKET NUMBER

DATE   4/2/07

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP

**Judge Dale A. Kimball**
**DECK TYPE:** Civil
**DATE STAMP:** 04/02/2007 @ 14:35:10
**CASE NUMBER:** 2:07CV00199 DAK