---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, et al., | |
| | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiffs,** | |
| vs. | |
| | **Case No.  2:07-CV-00199DAK** |
| SELMA SIERRA, in her official capacity as Director of the Bureau of Land Management Utah State Office, et al., | **Judge Dale A. Kimball** |
| **Defendants.** | |

---

Plaintiffs Southern Utah Wilderness Alliance (SUWA), et. al.,[1] appeal the decision of

Defendant Selma Sierra, in her official capacity as director of the Bureau of Land Management

(BLM) Utah State Office, to deem suspended a number of conventional oil and gas leases.  The

court heard oral arguments on July 30, 2008.  At oral argument, Stephen H.M. Bloch and Sharon

Buccino represented Plaintiffs, and Jeffrey E. Nelson represented BLM.  Now, having carefully

considered the briefs and other materials submitted by the parties, as well as the law and facts

relating to the appeal, the court issues the following Memorandum Decision and Order.

---

[1]   Plaintiffs include Natural Resources Defense Council, The Wilderness Society, National Parks Conservation

**BACKGROUND**

In 1981, Congress enacted the Combined Hydrocarbon Leasing Act of 1981 (the Act). The Act allowed owners of conventional oil and gas leases to apply to convert their leases to a combined hydrogen carbon lease (CHL), provided that the oil and gas lease had been issued prior to November 16, 1981, and was located within a designated Special Tar Sand Area (STSA).

Under the Act, an owner wishing to file for conversion had to file his or her application by November 16, 1983. The Act directed that, following submission of a complete plan of operations, "the Secretary shall suspend the running of the term of any oil and gas lease proposed for conversion until the plan is finally approved or disapproved." 30 U.S.C. § 226(n)(1)(B). Similarly, the Administrative regulations adopted pursuant to the Act state that

> [u]pon determination that the plan of operations is complete, the supervisor shall notify the authorized officer who shall then suspend the term of the Federal oil and gas lease(s) as of the date that the complete plan was filed until the plan is finally approved or rejected. Only the term of the oil and gas lease shall be suspended, not any operation and production requirements thereunder.

43 C.F.R. § 3140.2-3(g)(1). The regulations direct that once the plan of operations is approved, the oil and gas leases convert to a CHL. *See id.* § 3140.4-1(a).

By November 16, 1983, BLM had received thirteen applications, including the three following serialized lease applications at issue here: (1) UTU-72120 (located within the Circle Cliffs STSA), (2) UTU-72405 (located within the Tar Sands Triangle STSA), and (3) UTU-

---

Associations, and the Grand Canyon Trust

73098 (located within the Tar Sands Triangle STSA).[2]  Each of these serialized lease

applications was comprised of at least one conventional oil and gas lease.

### UTU-72120

On February 24, 1983, William Kirkwood filed an application with BLM to convert

thirty-five conventional oil and gas leases to CDL's.  BLM serialized this application as UTU-

72120.

On September 9, 1983, BLM determined that the plan of operations for serialized lease

application UTU-72120 was complete.  Following this determination, BLM did not take any

action to suspend Kirkwood's oil and gas leases.  On August 8, 1997, BLM issued an order

rejecting the CHL conversion application for UTU-72120.  BLM's rejection order states that all

lands included within the application are within boundaries of Grand Staircase-Escalante

National Monument, and under the Act, mineral leasing is not permitted in National Monuments.

Following appeal of this decision to the Interior Board of Land Appeals (IBLA), BLM---

apparently without explanation---requested and obtained a remand of its order.

On January 29, 2007, BLM issued a decision that, among other things, rejected the

conversion application for a number of individual leases within UTU-72120 and deemed eight

conventional oil and gas leases suspended as of August 8, 1983, the date Kirkwood filed the

complete plan of operations.  The eight conventional oil and gas leases BLM deemed suspended

were U-25855, U-27491, U-28169, U-28919, U-37312, U-37315, U-37317, and U-43694.  BLM

further determined that Kirkwood owed rentals on the eight leases for the suspension period.

---

[2]  Initially, Plaintiffs also challenged UTU-71309 and UTU-21085.  Plaintiffs have subsequently waived that challenge.

Kirkwood subsequently appealed BLM's decision.  In his brief on appeal, Kirkwood claimed that BLM erred in, among other things, deeming the eight leases suspended and rentals due for the suspension period.  SUWA filed an amicus brief, closely resembling the opening brief Plaintiffs filed here, in which SUWA asserted that Kirkwood's challenge to the rental payments "raises two issues of even larger import," including that "BLM never suspended the[] eight leases and, thus, [the leases] have long since terminated."  IBLA has yet to render a ruling regarding UTU-72120.

### UTU-72405

In December 1981 and January 1982, Santa Fe Energy Company and Altex Oil Company filed applications with BLM to convert thirty-six conventional oil and gas leases to CHL's, including U-21036, U-21106, U-21488, U-21489, and U-24444.  BLM serialized these applications as UTU-72405.

In August 1983, BLM determined that serialized application UTU-72405 was complete upon the date of filing—July 19, 1983.  In February 1984, BLM rejected requests to suspend operation and production of the five above leases within UTU-72405, stating that, in accordance with 43 C.F.R. 3140.2-3(g), the "requests are redundant in that the accepted Plan of Operations for the conversion to CHL of the existing oil and gas leases automatically places the term of the oil and gas leases in suspension."

A December 10, 1991 BLM letter explained that several leases, including U-21036, U-24444, and U-21488, had "expired at the end of their primary term."  The letter further stated that "[o]nce an oil and gas lease expires, rental is no longer required and no rights in the lease exist even though an application to convert the lease to a [CHL] has been filed."

In its January 29, 2007 decision regarding UTU-72405, BLM deemed the five above stated leases suspended as of July 19, 1983, the date of filing the complete plan of operations, and rentals due for the suspension period.  The BLM decision also rejected conversion rights for eleven other conventional oil and gases leases serialized under UTU-72405.

Kirkwood, who by this time had obtained assignments to the leases, appealed BLM's rejection of conversion rights to IBLA.  In his appeal, Kirkwood does not dispute the suspension ruling regarding the five leases.  But, in contesting BLM's decision to reject conversion rights, Kirkwood assumes that the leases were automatically suspended once BLM determined that the plan of operations were complete.  In an amicus brief, SUWA challenges the occurrence of such suspension, arguing that the leases were not suspended automatically upon BLM determining that the plan of operations was complete and that an authorized officer had to actually take some action to effectuate the suspension.

As with UTU-72120, IBLA has not yet rendered a decision regarding UTU-72405.

### UTU-73098

On November 10, 1983, Kirkwood filed an application to convert twenty-five conventional oil and gas leases to CHL's, including U-21473, U-21474, U21475, U-21476, U-21477, U-21478, U-21479, and U-30095.  BLM serialized the application as UTU-73098.  The record is not clear as to when the plan of operation was complete for UTU-73098.  BLM letters indicate that the plan of operation was incomplete as of January 31, 1984.

On August 1, 1990, BLM decided that it had issued suspension of operations and production from December 6, 1982, to September 11, 1989, for six of the eight relevant UTU-73098 leases:  U-21473, U-21474, U-21476, U-21477, U-21478, U-21479, and U-30095.  BLM

noted in its decision that although rentals were not due during the approximately seven-year period because of the suspension order, rentals were due now that the suspension period had terminated.  BLM also stated that the leases would expire on September 18, 1991.

On October 3, 2006, BLM issued a decision stating that the eight leases were deemed suspended as of November 29, 1983, the date that a complete plan of operations was filed, and rentals were due for the suspension period.  In that decision, BLM stated that Kirkwood had thirty days from receipt of the decision to file an appeal.  On November 8, 2006, Kirkwood requested an extension to file an appeal.  On November 13, 2006, BLM declined Kirkwood's request, stating that Kirkwood failed to file an appeal or request for extension within thirty days of October 6, 2006, the date Kirkwood received the decision.  Kirkwood subsequently sent a letter to BLM requesting that the agency reconsider its decision to refuse to extend the time for appeal.  BLM denied the request to reconsider on December 8, 2006.  On January 5, 2007, Kirkwood filed a notice of appeal regarding the December 8, 2006 letter.  On March 15, 2007, IBLA affirmed BLM's decision to deny an extension for time to appeal.

Plaintiffs filed suit in federal court on April 2, 2007.  In their Complaint, Plaintiffs first allege that BLM erroneously deemed the above discussed conventional oil and gas leases suspended.  Plaintiffs further claim that even if BLM properly determined that the leases had been suspended, the leases have all presently terminated due to either expiration of primary terms or failure to pay annual rentals.  Finally, Plaintiffs allege that any attempt by BLM to deem the leases suspended effectively results in the issuance of new oil and gas leases in areas in which leasing activities are presently prohibited.

**STANDARD OF REVIEW**

The court will only set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also Pennaco Energy, Inc. v. United States Dept. of Interior*, 377 F.3d 1147, 1156 (10th Cir. 2004).

## DISCUSSION

Plaintiffs ask this court to reverse BLM's decision to deem suspended various conventional oil and gas leases included within serialized lease applications UTU-72120, UTU-72405, and UTU-73098.  Plaintiffs argue that this decision contravenes law because, under the implementing regulations, suspension does not automatically occur upon submission of complete plans, and BLM must take action to suspend the leases.  *See* 43 C.F.R. § 3140.3(g)(1).  Because the agency failed to take such action, Plaintiffs argue that all the leases terminated on their own accord for either failure to pay annual rentals or for expiration of the lease term.  Furthermore, Plaintiffs assert that even if the court agrees with BLM that the leases were suspended, the specific type of suspension provided for in the regulations suspends only the term of the leases, not the rentals requirement.  Because the parties agree that the lessees did not pay rentals on the leases, Plaintiffs argue that the leases automatically terminated.  According to Plaintiffs, BLM cannot retroactively suspend the leases because, contrary to federal regulations, the lessees never applied for a suspension prior to termination.  Either way, Plaintiffs argue that BLM's suspension effectively resulted in the agency issuing new leases in areas that are now closed to oil and gas leasing and development.

In response, BLM declines to address the merits of Plaintiffs' claims.  Instead, BLM argues that (1) the court lacks subject matter jurisdiction regarding UTU-72120 and UTU -72405

because there is no final agency action from which to appeal, (2) the court lacks subject matter

jurisdiction as to UTU-73098 because Plaintiffs did not file suit within the requisite statute of

limitations, and (3) Plaintiffs' claims are unripe for review.  Because this court cannot proceed to

the merits of Plaintiffs' claims if it lacks jurisdiction, the court turns to the jurisdictional

questions first.  *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184,

1191 (2007) ("Without jurisdiction the court cannot proceed at all in any cause; it may not

assume jurisdiction for the purpose of deciding the merits of the case." (quotations and citation

omitted)).

Under the Administrative Procedures Act (APA), Plaintiffs' claims must be ripe for this

court to assert subject matter jurisdiction.  *See Wopsock v. Nordwall*, No. 2:03-CV-826, 2004

WL 4951450, at *4 (Dist. Utah Sept. 29, 2004) (citing *Gordon v. Norton*, 322 F.3d 1213, 1219

(10th Cir. 2003)).  "Plaintiffs bear the burden of establishing ripeness, which, under the APA,

necessarily includes the existence of a final agency action."  *Id*. at *5 (citing *Gordon*, 322 F.3d at

1219).  In addition to considering whether a final agency action exists, a court's ripeness

determination also asks (1) "whether the issues are purely legal," (2) "whether the action has or

will have a direct and immediate impact upon the plaintiff," and (3) "whether resolution of the

issues will promote effective enforcement and administration by the agency."  *Sierra Club v.*

*United States Dep't of Energy*, 287 F.3d 1256, 1263 n.3 (10th Cir. 2002).  As stated another way

by the Tenth Circuit,

> [t]o determine if an agency's decision is ripe for review, . . . the
> court must consider:  1) whether delayed review would cause
> hardship to the plaintiffs; 2) whether judicial intervention would
> inappropriately interfere with further administrative action; 3)
> whether the courts would benefit from further factual development
> of the issues presented.

*Id*. at 1262-63; *see also id*. at 1263 n.3 (explaining that the Tenth Circuit views these two stated tests for determining ripeness as "essentially the same").

Regarding UTU-72120 and UTU-72405, BLM argues that Plaintiffs' claims as to these serialized leases are unripe for review because no final agency action exists. It is well established that under the APA, only final agency actions are subject to judicial review. *See* 5 U.S.C. § 704. Federal regulations, promulgated under the APA, permit appeal of BLM land use decisions to IBLA, *see* 43 C.F.R. § 4.410(a), and provide that "unless a petition for a stay of decision has been timely filed and the decision being appealed has been made effective in a manner provided [in other paragraphs of this regulation or other relevant regulation,] . . . no decision which at the time of its rendition is subject to appeal to the Director or an Appeals Board shall be considered final so as to be agency action subject to judicial review under 5 U.S.C. [§] 704," 43 C.F.R. § 4.21(c). Here, Kirkwood did not file a petition for stay of BLM's decisions regarding UTU-72120 and UTU-72405, and therefore while Kirkwood's appeals are pending there are no final agency actions for this court to review.

Plaintiffs, however, dispute this conclusion on two grounds. First, concerning UTU-72120, Plaintiffs argue that Kirkwood's appeal is immaterial to the merits of Plaintiffs' claims before this court. Second, regarding UTU-72405, Plaintiffs assert that Kirkwood's appeal involves different individual leases than those involved here and that the challenges Kirkwood raises involving these different leases have no impact on the issues Plaintiffs raise for review before this court.

The court disagrees. In Kirkwood's UTU-72120 appeal, he directly challenges BLM's decision to deem the individual leases suspended and rentals due. Furthermore, SUWA, in its

9

amicus brief to IBLA, avers that Kirkwood's challenge to rental requirements implicates the

larger issue of whether BLM actually ever suspended the leases under 43 C.F.R. § 3140.3(g)(1).

SUWA's brief essentially asks IBLA to reverse BLM's determination to deem the leases

suspended.  The arguments outlined in SUWA's amicus brief are essentially identical to those

set forth by Plaintiffs.

As for Kirkwood's UTU-72405 appeal, the court recognizes that the appeal involves

different individual leases than those involved in this case.  The court also acknowledges that

Kirkwood's appeal does not directly challenge any suspension decisions.  Nonetheless, in his

appeal, Kirkwood assumes the propriety of BLM's suspension determinations, and SUWA again

devotes much of its amicus brief to requesting that IBLA evaluate the suspension determination

and conclude that no suspensions occurred.  Thus, even assuming final agency action had

occurred with regard to UTU-72405, the court still declines to consider Plaintiffs' claims on the

basis that judicial action could be premature, could interfere with present agency efforts to

resolve the issues raised by Plaintiffs, and could result in piecemeal litigation.  This is true even

though the suspension issue is not directly raised by Kirkwood in his appeal.  That is, because

IBLA reviews BLM decisions de novo, *see IMC Kalium Carlsbad v. Bd. of Land Appeals*, 206

F.3d 1003, 1009 (10th Cir. 2000), "even if [IBLA] affirms the decision of the BLM, it may do so

on different grounds which would [nevertheless] render an opinion of this [c]ourt meaningless,"

*Ctr. for Biological Diversity v. United States Dept. of Interior*,  255 F.Supp.2d 1030, 1036 (D.

Ariz. 2003).  Furthermore, courts must give "'substantial deference'" to an agency's

interpretation of its own regulations.  *Martin v. Occupational Safety & Health Review Comm'n*,

499 U.S. 144, 149 (1991) (quoting *Lyng v. Payne*, 476 U.S. 926, 939 (1986)).  This is

particularly true where the meaning of the regulation is unclear.  *See id*.; *see also* Laura Hunter

Dietz, et al., *Agency's Interpretation of its Regulations*, 2 Am. Jur. 2d Administrative Law § 495.

 Thus, sound policy favors allowing the agency the first opportunity to interpret a potentially

ambiguous regulation—such as 43 C.F.R. § 3140.3(g)(1).  *See Sandoz Pharm. Corp. v.*

*Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990); *see also Lopez-Flores v. Dep't of*

*Homeland Security*, 387 F.3d 773, 777 (8th Cir. 2004) ("[A]n agency should have the first

opportunity to interpret and apply its own regulations.").

    In short, because the court determines that with regard to UTU-72120 and UTU-72405

no final agency action exists and Plaintiffs' claims are unripe for review, the court dismisses

Plaintiffs' claims for lack of jurisdiction.  As for Plaintiffs' claims regarding UTU-73098, the

court also concludes that is lacks subject matter jurisdiction.

    BLM contends that the court lacks subject matter jurisdiction with respect to UTU-73098

because Plaintiffs did not file suit, challenging BLM's decision regarding the leases included in

the serial application, within ninety days, as required by the Mineral Leasing Act (MLA).  *See* 30

U.S.C. § 226-2.  In response, Plaintiffs contend that there was no final decision of the Secretary

until March 15, 2007, the date on which IBLA affirmed BLM's decision to deny Kirkwood an

extension of time to file an appeal, and therefore, Plaintiffs' filing of their complaint on April 2,

2007, was well within the ninety-day period.

    The MLA provides that "[n]o action contesting a decision of the Secretary involving any

oil and gas lease shall be maintained unless such action is commenced or taken within ninety

days after the final decision of the Secretary relating to such matter."  30 U.S.C. § 226-2.  Under

federal regulations any party that is "adversely affected by the decision of [BLM] . . . shall have

the right to appeal to [IBLA]."  43 C.F.R. § 4.410(a).  "IBLA is the final decision maker of

[BLM]."  *IMC Kalium Carlsbad, Inc. v. Interior Bd. of Land Appeal*s.  206 F.3d 1003,

1010 (10th Cir. 2000).  The appeals board constitutes "an authorized representative of the

Secretary for the purpose of hearing, considering[,] and determining, as fully and finally as might

the Secretary" appeals from BLM decisions.  43 C.F.R. § 4.1

Here, BLM issued a decision regarding UTU-73098 on October 3, 2006.  In that

decision, BLM stated that Kirkwood had thirty days from receipt of the decision to file an

appeal. On November 8, 2006, Kirkwood requested an extension to file an appeal.  On

November 13, 2006, BLM declined Kirkwood's request, stating that Kirkwood failed to file an

appeal or request for extension within thirty days of October 6, 2006, the date Kirkwood

received the decision.  Kirkwood subsequently sent a letter to BLM requesting that the agency

reconsider its decision to refuse to extend the time for appeal.  BLM denied the request to

reconsider on December 8, 2006.  On January 5, 2007, Kirkwood filed a notice of appeal

regarding the December 8, 2006 letter.  On March 15, 2007, IBLA affirmed BLM's decision to

deny an extension for time to appeal.

Accordingly, the court determines that, where the parties cite no authority suggesting

otherwise, BLM's denial of a request to extend time for appeal constituted an adverse decision,

appealable to IBLA under federal regulations.  Because IBLA's decision regarding Kirkwood's

request constituted the final decision of the Secretary, Plaintiffs' filing of their complaint less

than thirty days after IBLA's decision denying Kirkwood's request was within the MLA's

ninety-day statute of limitations.  *See* 30 U.S.C. § 226-2.

Nevertheless, the court determines that Plaintiffs' claims concerning UTU-73098 are

unripe for review and must be dismissed.  Although there is no pending appeal before IBLA

involving UTU-73098, Plaintiffs' claims regarding UTU-73098 entail the same issues as are on

appeal before IBLA regarding UTU-72120 and UTU-72405—namely, whether under agency

regulations, BLM had to take some action to suspend the leases.  Because it is entirely possible

that IBLA may deliver a decision in Kirkwood's pending appeals that render Plaintiffs' claims as

to UTU-73098 entirely moot, and because the court recognizes the preferred practice of allowing

the agency the first opportunity to interpret a potentially ambiguous regulation, the court

declines review at this time.


### CONCLUSION

The court DISMISSES Plaintiffs' claims without prejudice for lack of subject matter

jurisdiction.

DATED this 20th day of August, 2008.

BY THE COURT:


DALE A. KIMBALL
United States District Judge