IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SELMA SIERRA, *in her official capacity as Director of the Bureau of Land Management Utah State Office, et al.*,<br><br>Defendants,<br><br>KIRKWOOD OIL AND GAS, LLC and WILLIAM C. KIRKWOOD,<br><br>Intervenor-Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:07-cv-00199-CW<br><br>Judge Clark Waddoups |

## I.    INTRODUCTION

Plaintiffs Southern Utah Wilderness Alliance, Natural Resources Defense Council, The Wilderness Society, National Parks Conservation Association and Grand Canyon Trust (collectively, "Plaintiffs") bring this suit to challenge three decisions by the Bureau of Land Management ("BLM") and a decision by the Interior Board of Land Appeals (the "Appeals Board") concerning 39 federal oil and gas leases owned by Intervenor-Defendants Kirkwood Oil and Gas, LLC and William C. Kirkwood (collectively, "Kirkwood").  Before the court considers the merits of the case, it must be satisfied that it has jurisdiction to hear Plaintiffs' complaint.  The court holds that because the members of Plaintiff organizations have not established an injury-in-fact, Plaintiffs do not have standing and the court

therefore lacks jurisdiction to hear their claims.  Accordingly, the court dismisses all claims for lack of jurisdiction.

## II.    <u>BACKGROUND</u>

Under the Combined Hydrocarbon Leasing Act ("Act"), the BLM published regulations to implement Congress' goal of encouraging leasing and development of tar sands resources in Utah.[1]  The Act effectively provided that a company with a preexisting oil and gas lease in a special tar sands area could obtain a Combined Hydrocarbon Lease ("Combined Lease"), which would permit development of tar sands.[2]  To obtain a Combined Lease, the candidate's oil and gas leases must have been issued prior to November 16, 1981 and be located inside a special tar sands area.  Further, the candidate would be required to submit an application to the Utah State Office of the BLM, including "a plan of operations" for the development and extraction of tar sands.[3]  After the BLM's review of the application, the Act stated that "[u]pon determination that the plan of operations is complete, the authorized officer shall suspend the term of the Federal oil and gas lease(s) as of the date that the complete plan was filed until the plan is finally approved or rejected.  Only the term of the oil and gas leases shall be suspended, not any operation and production requirement thereunder."[4]

The case at hands involves 39 federal oil and gas leases owned by Kirkwood, which Kirkwood has been attempting to convert to Combined Leases through three applications beginning in 1982.  The history surrounding these leases is somewhat lengthy and the full history need not be explored here.  Relevant to this motion is that the Appeals Board overturned previous BLM decisions regarding the suspension and rental payments owed by Kirkwood.  Plaintiffs now bring this action to challenge three decisions by the BLM and the decision by the Appeals Board finding in favor of Kirkwood.  Plaintiffs

---

[1] 43 C.F.R. § 3140.0-1 (2006).
[2] *Id.*
[3] § 3140.2-2, -3.
[4] § 3140.2-3(g)(1).

allege that the Appeals Board illegally and retroactively suspended and effectively issued 39 new oil and

gas leases.  The two questions surrounding Plaintiffs' suit are: (1) whether the suspension of the lease

terms were automatic upon submission of a complete plan of operations, pursuant to § 3140.203(g)(1),

or whether an officer was required to suspend the term of the lease; and (2) whether Kirkwood's alleged

failure to make rental payments resulted in the termination of all 39 leases.  Kirkwood now moves to

dismiss, arguing that Plaintiffs' challenges to the federal administrative actions are either time barred or

not yet ripe.  Because Plaintiffs have not shown the constitutional requirement of an injury-in-fact to

their members, they do not have standing.  The court need not consider Defendants' other contentions.

## III.    DISCUSSION

### A.  Standing Requirements

Kirkwood moved to dismiss the complaint under Rule 12(b)(6), alleging Plaintiff failed to state a

cognizable claim for relief.  On such a motion to dismiss, the court "must accept all the well-pleaded

allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."[5]

In support of their motion to dismiss, however, Kirkwood notes: "Plaintiffs did not attach affidavits or

other indicia of legally protected interests to the Complaint" in order to show standing.[6]  In response,

Plaintiffs attached three declarations to their Memorandum in Opposition.  In those declarations, Ray

Bloxham, Bill Hedden, and David Nimkin (collectively, "Members") assert that they will be injured if

the BLM and the Appeals Board decisions regarding these leases are permitted to stand.

Accepting the declarations as true, the threshold question becomes whether the evidence

presented is sufficient to support a conclusion that Plaintiffs have standing.  "Standing to sue. . . has its

constitutional origins in the 'case or controversy' limitation of Article III which ensures that courts

---

[5] *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).
[6] (Intervenor-Def.s' Mem. in Supp. of Mot. to Dismiss., 20 n.29) (Dkt. No. 51).

exercise their power only in cases where true adversary context allows informed judicial resolution."[7]

The standing doctrine requires "federal courts to satisfy themselves that the plaintiff has alleged such a

personal stake in the outcome of the controversy as to warrant his invocation of federal-court

jurisdiction."[8]  The court, therefore, has "an independent obligation to assure that standing exists,

regardless of whether it is challenged by any of the parties."[9]  Accordingly, the court now raises the

question of Plaintiffs' constitutional standing *sua sponte*, and finds that because Plaintiffs have not

presented evidence sufficient to demonstrate that they have standing, the court lacks jurisdiction in this

action.  Thus, it is unnecessary to reach the merits of the pending motion.[10]

### B.  <u>Organizational Standing On Behalf of Members</u>

The Supreme Court has long permitted organizations to litigate on behalf of their members.[11]

Even so, an organization's "mere interest in a problem, no matter how long-standing the interest and no

matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render

[standing to] the organization."[12]  Rather, the Court has required that for an organization or association

to have standing under Article III to bring suit on behalf of its members: "(a) its members [must]

---

[7] *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1294 (10th Cir. 1980) [hereinafter *Citizens Concerned*].

[8] *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1151 (2009) (internal citations omitted).

[9] *Id.* at 1152; *See also Citizens Concerned*, 628 F.2d at 1297, 1301 (stating, that "jurisdictional questions are of primary consideration and can be raised at any time by courts on their own motion," and that a "federal court must in every case, and at every stage of the proceeding, satisfy itself as to its own jurisdiction, and the court is not bound by the acts or pleadings of the parties.").

[10] In addition to the Article III requirements, there are also a set of prudential principles that bear on the question of standing. *See Utah v. Babbit*, 137 F.3d 1193, 1202-03 (10th Cir. 1998) ("These prudential principles include 'the general prohibition on a litigant's raising another person's legal rights [and] the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches.'  Unlike their constitutional counterparts, [these prudential requirements] can be modified or abrogated by Congress."). Because each of Plaintiffs' causes of action allege that the BLM and/or the Appeals Board violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), Plaintiffs would generally need to meet the statutory standing requirements of the APA for this court to have jurisdiction.  (Am. Compl., ¶¶ 55, 63, 69, 73, 80) (Dkt. No. 32); *see also Babbit*, 137 F.3d at 1203 ("Plaintiffs must show there has been some "final agency action" and must demonstrate that [their] claims fall within the zone of interests protected by the statute forming the basis of [their] claims.") (internal citations omitted).  Because Plaintiffs fail to show Article III standing, however, an evaluation of these principles is unneeded and not addressed.  *Babbit*, 137 F.3d at 1215 (stating that "[i]n light of our conclusion that Plaintiffs lack constitutional standing, we need not address whether prudential limitations or the statutory requirement for judicial review under the APA would also preclude review of Plaintiffs' claims.").

[11] *See Summers*, 129 S. Ct. at 1149 ("It is common ground that . . . organizations can assert the standing of their members.").

[12] *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).

otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[13]  In considering the second and third prongs, it is clear in this case that the proper management and protection of the environment are viable interests of Plaintiffs.  And, because "individual participation is not normally necessary when an association seeks prospective or injunctive relief for its members," both the second and third prongs are sufficiently met.[14]

The first prong, and the question of importance here, is whether the members of Plaintiff organizations have "standing to sue in their own right."  To establish that Members can meet "[t]he irreducible constitutional minimum of standing" Plaintiffs must prove each of three elements.  First, Members must have suffered an injury-in-fact, that being "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent,' not conjectural or hypothetical."[15] Second, there must be a "causal connection between the injury and the conduct complained of."[16] Lastly, it must be "'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision."[17]

### C.  Members' Injury-in-Fact

Plaintiffs must establish injury, not as a mere pleading requirement but rather as an indispensable part of their case.[18]  In pursuing this analysis, the Court has cautioned that an evaluation of injury "is not an ingenious academic exercise in the conceivable . . . [but] requires . . . a factual showing of perceptible harm."[19]  Thus, although an injury "may reflect 'aesthetic, conservational, and recreational as well as economic values," the Court has also found that "broadening the categories of injury that may be alleged

---

[13] *United Food & Commercial Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 553 (1996).
[14] *Id.* at 546.
[15] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).
[16] *See id.* at 560 ("[T]he injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.").
[17] *Id.* at 561 (internal citations omitted).
[18] *See Lujan*, 504 U.S. at 561.
[19] *Summers*, 129 S. Ct. at 1152 (internal citations omitted).

in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury."[20]   In any event, "[s]tanding jurisprudence is a highly case-specific endeavor," and must turn on the precise evidence provided by the parties.[21]

There is no doubt that Plaintiffs have an interest in the present litigation.  Injury-in-fact, however, "requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured."[22]  To comply with this requirement, Plaintiffs submitted Members' declarations.  In each of these declarations they testify of their past visits to various parts of the areas in question for "health, recreational, spiritual, educational, scientific, aesthetic, and other interests" and of their intentions "to return as often as possible [to those areas they have previously visited], but certainly within the next year."[23]  Their declarations provide a description of their visits, the beauty and wonders of the areas they have seen, and an assertion that their "health, recreation, spiritual, educational, aesthetic, and other interests are directly affected and irreparably harmed by the BLM and the [Appeals Board's] decisions . . . ."[24]

While these declarations provide a certain degree of detail, the question is whether they adequately state an injury-in-fact.  As an initial matter, conclusory declarations of interests and harm do not suffice.  Rather an injury must be both "concrete and particularized," as well as "actual or imminent."[25]  In *Summers*, a case in which an environmental group sought standing through its members, the Court phrased the guiding question as follows:

---

[20] *See Morton*, 405 U.S. at 738.

[21] *Babbit*, 137 F.3d at 1203.

[22] *Lujan*, 504 U.S. at 563.

[23] *See* (Bloxham Decl., 5-6.), (Hedden Decl., 2-3), (Nimkin Decl., 2-3) (Dkt. No. 60, ex. I, J, K).

[24] *See* (Bloxham Decl., 5-7.), (Hedden Decl., 2-3), (Nimkin Decl., 2-4).

[25] First, the Supreme Court has defined "particularized" to mean "that the injury must affect the plaintiff in a personal and individual way." *See Lujan*, 504 U.S. at 561 n.1.  Whatever the harm, there is no doubt that the declarations by Members evidences that it is particularized.  Secondly, nothing in the complaint or the record so much as alleges actual harm, but rather asserts only possible prospective harm.  As such, the question before the court is whether the harm asserted is both concrete and imminent.

6

[H]ow is the court to assure itself that some of these members plan to make use of the specific sites [at issue]?  Or that these same individuals will find their recreation burdened . . . ?  While its certainly possible – perhaps even likely – that one individual will meet all of these criteria . . . speculation does not suffice.[26]

Courts have varied in their approaches to applying the injury-in-fact analysis.[27]  For example, the District Court for the Eastern District of California has interpreted the Supreme Court case *Summers* as requiring environmental plaintiffs to "identify a particular site" and "provide evidence of 'concrete plans,' including specific dates, to visit . . . such sites."[28]  On the other hand, the District Court for D.C. opined that "the central question is the immediacy rather than the specificity of the plan, for the underlying purpose of the imminence requirement is to ensure that the court in which suit is brought does not render an advisory opinion in a case in which no injury would have occurred at all."[29]

For this court's analysis, the cases of *Summers* and *Tandy* are particularly helpful in demonstrating the bounds of the injury-in-fact test, and in differentiating concrete and imminent injury from mere speculation.  In *Summers*, respondent organizations challenged, on behalf of their members, regulations stemming from the Forest Service Decisionmaking and Appeals Reform Act.  Those regulations exempted certain fire-rehabilitation activities and salvage-timber sales from the notice, comment, and appeal process generally required for resource management plans under the Forest and Rangeland Renewable Resources Planning Act of 1974.[30]  The parties settled in the original action, but a question remained concerning whether standing could be maintained on account of an affidavit by a

---

[26] *Summers*, 129 S. Ct. at 1152.

[27] It is clear that the Tenth Circuit has required that the *Summers* standard be applied, as explained *infra*; however, it is unclear in some instances what concrete information the court was relying upon to conclude that the *Summers* standing requirements had been satisfied.  *See Chamber of Commerce of the U.S. v. Edmondson*, 594 F.3d 742, 756-58 (10th Cir. 2010), *Southern Utah Wilderness Alliance v. Office of Surface Mining Reclamation & Enforcement*, No. 09-4003, 2010 U.S. App. LEXIS 19817, at *10-15 (10th Cir. Sep. 23, 2010); *see also, Dine Citizens Against Ruining Our Env't v. Klein*, No. 07-CV-1475-JLK, 2010 U.S. Dist. LEXIS 116130, at *12-18 (D. Colo. Oct. 28, 2010).

[28] *Coal. for a Sustainable Delta v. McCamman*, 1:08-CV-00397-OWW-GSA, 2010 U.S. Dist. LEXIS 73747, at *65 (E.D. Cal. July 21, 2010).

[29] *Animal Legal Defense Fund, Inc. v. Espy*, 23 F.3d 496, 500 (D.C. Cir. 1994).

[30] *See Summers*, 129 S. Ct. at 1147.

respondent organization's member, Jim Bensman.  In that affidavit, Mr. Bensman testified that he had

visited many national forests in the past and planned to visit several others in the future.[31]

The Court first considered the concreteness of the plan and found that simply alleging that "*any*

particular [project] . . . will impede a specific and concrete plan of Bensman's to enjoy the National

Forests" was insufficient.[32]  The Court noted that because of the vast area of the national forests,

"without further specification it is impossible to tell *which* projects are . . . unlawfully subject to the

regulations."[33]  Next, the Court evaluated Mr. Bensman's intention or desire to visit these locations.[34]

Mr. Bensman testified that he "want[ed]" to return.[35]  Reversing the appellate court's decision to uphold

the district court's nationwide injunction against applying the regulations at issue, the Court held that:

> This vague desire to return is insufficient to satisfy the requirement of imminent injury: "Such
> 'some day' intentions – without any description of concrete plans, or indeed any specification of
> *when* the some day will be – do not support a finding of the "actual or imminent" injury that our
> cases require.'"[36]

In contrast, the Tenth Circuit in *Tandy* reviewed whether it was proper for the lower court to

grant summary judgment in favor of the defendants for lack of standing.  The plaintiffs in *Tandy* alleged

that the City of Wichita had violated the Rehabilitation Act and Title II of the Americans with

Disabilities Act because the fixed-route bus system was intentionally inaccessible to and unusable by

people with disabilities, injuring the plaintiffs through humiliation, mental anguish, and frustration.[37]

Plaintiff Allen submitted evidence that she had used the fixed-bus service in Wichita for many years and

had "averred an intent to use Wichita Transit's bus system for personal transportation several times per

---

[31] *Id*. at 1150.  The Court also considered whether Mr. Bensman had sustained past injuries, but summarily dismissed the
challenge and focused on the imminent injury analysis.
[32] *Id*.
[33] *Id*.
[34] *Id*.
[35] *Id*. at 1150-51.
[36] *Id*. at 1148, 50-51, 53 (quoting *Lujan*, 504 U.S. at 564).
[37] *Tandy v. City of Wichita*, 380 F.3d 1277, 1280-81 (10th Cir. 2004).

year in the future."[38]  The *Tandy* court held that "Allen's testimony of intent to use buses 'several times

per year' suggest[ed] a concrete, *present* plan to use [the] buses several times *each* year, including the

year in which she made that statement."[39]

Clearly, multiple differences exist between *Summers* and *Tandy*.  For instance, in *Summers*, the

member had said that he "wanted" to return to the various locations, but expressed no timetable for

doing so.  In contrast, the plaintiff in *Tandy* specifically "intended" to continue using the bus routes and

testified that she would continue to use the buses into the future.  This is not to say, however, that *Tandy*

stands for the proposition that a simple declaration of "intent" will serve as a per se justification of

standing.  Nor does *Tandy* establish that parties can simply provide a general or broad time-horizon in

which they intend to return to the activity or area at issue.  Indeed, the "profession of an 'intent' to return

to the places they had visited before [or in the case of *Tandy*, to use a bus system previously used,] . . . is

simply not enough."[40]

In reconciling *Summers* and *Tandy* the court must differentiate the "concrete" or "imminent"

factors of each case, and consider why the injury was, or was not, merely speculative.  In contrast to

*Summers*, the plaintiffs in *Tandy* had specific and documented instances where they had used the bus

systems in the past and had testified that they would continue to use the routes "several times *each*

year," beginning in the year of the statement and continuing into perpetuity.[41]  But more important than

the plaintiffs affirming that they would use the bus is the fact that using a bus is an everyday event.

Having shown that they had relied on the busses systematically in the past, it was not a difficult leap to

believe that the mere expression of intent to use it in the future was concrete and any injury, likewise,

---

[38] *Id*. at 1284.  Although other plaintiffs were considered, evaluating the first suffices for this standing analysis.
[39] *Id*.
[40] *Lujan*, 504 U.S. at 564.
[41] *Tandy*, 380 F.3d at 1284.

imminent.  As such, the court justifiably found that plaintiff Allen's intent to use Wichita Transit's buses

"several times per year" was not a "mere intent" to use the route at "some indefinite future time."[42]

Indeed, it seems that the appropriate standard to assert future injury is one that generally mirrors

the specificity and concreteness of past performances.  In the case of *Tandy*, bus use was frequent and an

every-day activity.  As such, less specificity would be required for planning future bus use in the future.

In contrast, visiting a particular recreational area is not an every-day activity to the extent that riding the

bus is, and more specificity is therefore required.  If the past activity was "every summer" or "every

other fall," then perhaps a similar future plan would suffice.  However, where the past actions do not

evoke a well-established trend, pattern, habit, or practice that can be relied upon with confidence

regarding the specific site involved in the litigation, more particularity in the planning is required.

The Ninth Circuit has noted such a distinction in *Ecological Rights Found. v. Pacific Lumber

Company*.  There, the court noted that: "repeated recreational use itself, accompanied by a credible

allegation of desired future use, can be sufficient, even if relatively infrequent, to demonstrate that

environmental degradation of the area is injurious to that person."[43]  Thus synthesizing *Summers* and

*Tandy*, it follows that unless there is evidence of repetitious use of each of the specific lands in question,

there cannot be a "credible allegation of desired future use" without specific concrete plans, and as such,

no immediacy of harm.  And as a plaintiff shows that he or she has more regularly relied upon or visited

a specific environmental site, his or her stated intent to do so in the future is less speculative, and the

probability of injury more concrete and imminent.

It is also important to note that the requirements to show injury-in-fact are heightened in certain

cases.  The Supreme Court has held that when the alleged injury is to occur at some indefinite future

time and the acts necessary to make the injury happen are at least partly within the plaintiff's own

---

[42] *Id.* at 1284-85 (*comparing Lujan*, 504 U.S. at 564 n.2).
[43] *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000).

control, the injury must "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all."[44]  Although the Court has not definitively interpreted "immediacy," the Eleventh Circuit has provided the clearest interpretation: "Immediacy requires only that the anticipated injury occur within some fixed period of time in the future.  Immediacy, in this context, means reasonably fixed and specific in time and not too far off."[45]  Put another way, when an injury is "at least partly within the plaintiff's control," the "reasonably fixed and specific time" must be specified with greater precision, with such a date particularly close in time. The court now considers each of the declarations, and whether Members have established such a concrete and imminent injury.

Mr. Bloxham testifies in his declaration that he visited the Tar Sand Triangle special tar sands area in May 2007 and the Circle Cliffs special tar sands area in May 2009.[46]  The Tenth Circuit has ruled, however, that "[s]tanding must be analyzed from the facts as they existed at the time the complaint was filed."[47]  As such, the court cannot consider testimony of visitations and experiences occurring after the commencement of the action.  Because the complaint was filed April 2, 2007, Mr. Bloxham's visitations had not yet happened as of Plaintiffs' filing and his declaration is therefore disregarded.

Next, Mr. Hedden testifies that he visited the French Spring and Happy Canyon areas in 2004, "traversing the leases in the Tar Sands Triangle [special tar sands area] at issue in this litigation."[48]  The testimony, therefore, evidences a single visit approximately three years before the action was filed.

Lastly, Mr. Nimkin testifies that he visited the Tar Sand Triangle special tar sands area in October 1996, traveling through "North Hatch Canyon and then along the Orange Cliffs, in Big Water

---

[44] *Id.* at 564 n.2.
[45] *ACLU of Fla., Inc. v. Miami-Dade County Sch. Bd.*, 557 F.3d 1177, 1194 (11th Cir. 2009) (internal citations omitted).
[46] (Bloxham Decl., 6).
[47] *Tandy*, 380 F.3d at 1284.
[48] (Hedden Decl., 2).

Canyon."  He also testified that in winter of 1998, he "visited the Circle Cliffs special tar sands area" and "traveled along the entire Wolverine Loop road and hiked in the area." [49]  He further testified that he takes "great pleasure from [his] visits" to the area – presumably the large area involved in this litigation.[50]  Although his testimony evidences singular visits to particular areas in 1996 and 1998, any other testimony concerning general "visits" are too broad in geography and too vague in time.  As the Supreme Court noted in *Lujan*, "a plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly in the vicinity of it."[51]  Accordingly, it cannot be said that any of the three Members have provided evidence that there has been any "repeated recreational use" of any of the particular areas in question.

This court does not decide whether Members needed to include specific dates for planned return visits to demonstrate immediacy.  It is clear that Members' stated intentions to return as often as possible, but "certainly within the next year"[52] is void of immediacy, much less "a high degree of immediacy."  The possibility of injury is fully in the hands of Plaintiffs and their members, which means that if they anticipate seeking an injury then they must convince the court that this intention is not fleeting.  This is precisely what was done by plaintiff organizations in *Wilderness Society v. Kane County*.  In *Kane County*, the Ninth Circuit upheld standing based upon testimony of a member of the plaintiff organizations, Jill Ozarski.  Ms. Ozarski testified that she had visited the lands in question "at least four times per year for multiple days since 2003, and intend[ed] to return as often as possible, and certainly within the next six months."[53]  As such, her testimony illustrated a consistent pattern of behavior, and the future usage was reliably within that established pattern of activity.

---

[49] (Nimkin Decl., 2).
[50] (Nimkin Decl., 2).
[51] *Lujan*, 504 U.S. at 565-66 (internal citations omitted).
[52] (Bloxham Decl., 6), (Hedden Decl., 2 ), (Nimkin Decl., 3).
[53] *See Kane County*, 581 F.3d 1198, 1210 (10th Cir. 2009).  *Compare with Wilderness Soc'y, Inc. v. Rey*, No. 06-35565, 2010 U.S. App. LEXIS 19660 at *11-12 (9th Cir. 2010) (holding that the member of Plaintiff organizations did not have standing

In contrast, such a likelihood of injury is not found in the case at hand, nor is the timeframe as near and the injury as imminent. Because Members' past visitations do nothing more than create isolated visits to the areas in question, more specificity is required in their future planning to remove the injury from the "speculative" and place it within the realm of "concrete" and "imminent." Under these facts, simply declaring their intent to return within the course of the year does not suffice. The court, therefore, concludes that Plaintiffs fail to demonstrate that Members' stated intent is actually bound for action, and that there is any real probability of harm.[54] To find otherwise would be to improperly extend the bounds of this court's jurisdiction to consider a claimed injury that is not yet realized, but contingent upon "speculation and conjecture."[55]

### D.  Other Considerations

Two additional considerations provide alternative grounds to dismiss in favor of Defendants. First, although Members provide some detail concerning their visits and experiences in various parts of Utah, nothing identifies those visits specifically to each of the 39 land leases at issue. Plaintiffs implicitly argue that Members' general activity in an area of "tens of thousands of acres," can be either averaged or considered in the aggregate without identifying the precise applicability of each of their activities to each affected lease.[56] As stated previously, "a plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly in the vicinity of it."[57] Perhaps Members' testimonies have been narrowly crafted to consider each of the 39 leases with pin-point accuracy. It is conceivable, but it would take more than what has been provided for the court to make that determination.

---

despite "not discounting the fact that he authored a hiking book about the area and [declared that he wanted to continue to visit the area] with his family in the future").

[54] *See South Mich. Ave. Assocs. Ltd. v. Devine*, 433 F.3d 961, 962 (7th Cir. 2006) ("Standing depends on the probability of harm, not its temporal proximity.").

[55] *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

[56] (Am. Compl., 1) (Dkt. No. 32).

[57] *Lujan*, 504 U.S. at 565-66 (internal citations omitted).

More importantly, however, is that the stated timetable for Members to make their return trips has lapsed.  Even if sufficiently concrete and immediate in the first instance, there is now no evidence that they ever intend to return.  Specifically, Mr. Bloxham's declaration was dated July 22, 2009, meaning that any return he was "certainly" to make within the next year had passed as of July 22, 2010.[58]  Likewise, Mr. Hedden and Mr. Nimkin both testified that they would "certainly" return to the various areas sometime between January 31, 2008 and January 31, 2009.[59]  No concrete and immediate plans to return to the areas in question have been submitted on the record for any period, of any length, following July 22, 2010.  The declarations do not demonstrate that Members' future injury will ever be realized, and Plaintiffs have failed to supplement the record during the pendency of this case.  As such, Plaintiffs have failed to show standing.

While Plaintiffs are not to blame for the length of litigation, they alone are responsible for setting forth facts that satisfy the court that they have standing.  Members' declarations failed to identify with specificity the particular lands at issue through which they would suffer a concrete and imminent injury, and provided no evidence that injury will ever occur when each of the prospective dates of visitation provided in the declarations have passed.  Furthermore, Plaintiffs have elected not to amend or update Members' declarations, and they have failed to both establish a pattern of previous use and demonstrate concrete and detailed plans that assured imminent injury for a period of time that would span this litigation.  Accordingly, the court concludes that it does not have jurisdiction and dismisses Plaintiffs' claims.

---

[58] (Bloxham Decl., 6-7).
[59] (Hedden Decl., 2-3), (Nimkin Decl., 3-4).

IV.     **CONCLUSION**

For the foregoing reasons, the court finds that Plaintiffs do not have standing because they have not shown that their members have suffered an injury-in-fact.[60]  The complaint is DISMISSED.


DATED this 16th day of November, 2010.


BY THE COURT:

Clark Waddoups

United States District Judge

---

[60] Because Members fail to show this prong of the standing analysis, it is not necessary to consider either the second or third prongs of causality and foreseeability, or any of Defendants' other contentions.