IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>JUAN PALMA, *in his official capacity as Director of the Bureau of Land Management Utah State Office, et al.*,<br><br>Defendants,<br><br>KIRKWOOD OIL AND GAS, LLC and WILLIAM C. KIRKWOOD,<br><br>Intervenor-Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:07-CV-00199-CW<br><br>Judge Clark Waddoups |

## **INTRODUCTION**

Plaintiffs have moved the court to amend or correct its decision to dismiss Plaintiffs' complaint, as stated in the Memorandum Decision and Order dated November 16, 2010 (the "decision"). *S. Utah Wilderness Alliance v. Sierra* (*SUWA*), No. 2:07-CV-199, 2010 U.S. Dist. LEXIS 121731 (D. Utah Nov. 16, 2010) (Dkt. No. 69). Plaintiffs contend that the court failed to recognize various declarations of Mr. Bloxham, which they assert established their standing in this matter and the court's subject-matter jurisdiction. The court finds that the declarations do not cure the jurisdictional failings as addressed in the court's decision. Because Plaintiffs have had numerous opportunities to address the court's concerns but have failed to do so, as explained herein, Plaintiffs' motion is denied and the action is dismissed.

1

## DISCUSSION

### I. DISMISSAL OF PLAINTIFFS' COMPLAINT

Plaintiffs express a certain degree of dissatisfaction with the court having ruled *sua sponte* without additional opportunity to brief the matter. *See* (Pls.' Mem. Supp. Mot. Am. J., 2) (Dkt. No. 72). To address Plaintiffs' concerns, the court will make several observations. First, Rule 41(b) states that a dismissal order generally operates as an adjudication on the merits, unless the dismissal order states otherwise. An exception to this default rule exists, however, when dismissal is due to a lack of jurisdiction. Fed. R. Civ. P. 41(b). *See also, Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) (stating that "dismissal for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.").[1] Likewise, the court's ruling in this case was only a dismissal of the complaint and not the action. *See generally*, *Moya v. Schollenbarger*, 465 F.3d 444, 450-51 (10th Cir. 2006) (articulating the difference between a dismissal of a complaint and dismissal of an action for purposes of 28 U.S.C. § 1291 finality.). As such, the court's decision neither barred Plaintiffs from seeking to cure the jurisdictional deficiencies nor precluded them from then litigating the action on the merits.

Second, Plaintiffs object to the court's failure to consider affidavits included in the administrative record before it ruled. Plaintiffs assert that if the court had done so, it would have found evidence supporting jurisdiction. *See* (Pls.' Mem. Supp. Mot. Am. J., 2). The Tenth Circuit has required, however, that matters on appeal must be brought forth in the briefing rather

---

[1] This does not mean, however, that there is no preclusion. "The preclusion effect . . . is one of *issue preclusion* (collateral estoppel) rather than *claim preclusion* (res judicata)." *Id*. at 1219. This means that a district court's standing ruling may preclude a plaintiff from "relitigating the standing *issue* on the facts presented, but does not preclude his *claim* . . . . *Id.*

2

than through a simple adoption of the record. *See Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 623-24 (10th Cir. 1998). "Allowing litigants to adopt district court filings would provide an effective means of circumventing the page limitations on briefs . . . and unnecessarily complicate the task of an appellate judge." *Id.* at 624. Although this rule is not directly on point in this case, the reasoning clearly applies. The excluded affidavits were not properly before the court in the briefing, nor were they incorporated in the complaint.[2] Given the extensive administrative record encompassing numerous binders, permitting Plaintiffs to simply adopt the record in light of their failure to fully set forth their jurisdictional argument in the briefing "unnecessarily complicate[s] the task" before the court.

Third, despite Plaintiffs' contentions to the contrary, the jurisdictional issue was originally raised by the Intervenor-Defendants in their briefing. *See* (Intervenor-Defs.' Mem. Supp. Mot. Dismiss, 20) (Dkt. No. 52). In response, Plaintiffs filed several declarations in their memorandum in opposition. *See* (Pls.' Mem. Opp'n Defs.' Mot. Dismiss, Ex. I, J, K) (Dkt. No. 60-2). In other words, Plaintiffs were given notice of the deficiency and advantaged themselves of the opportunity to cure. After reviewing Plaintiffs' submissions, the court determined that it still did not have subject-matter jurisdiction and dismissed the complaint pursuant to Fed. R. Civ. P. 12(h)(3). As stated previously, this dismissal did not bar Plaintiffs from further attempts to cure the jurisdictional failings.

## II.  MOTION FOR RECONSIDERATION

Before the court is Plaintiffs' motion to reconsider its decision dismissing the complaint. "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

---

[2] *See* n.7 regarding the January 31, 2008 Bloxham declaration.

Plaintiffs do not contend that there was an intervening change in the controlling law or that new evidence is now presented that was previously unavailable. Plaintiffs *do* contend that the court made a mistake of fact by relying only on the declarations indicated in its decision. *See* (Pls.' Mem. Supp. Mot. Am. J., 2). Those declarations, however, were the only documents properly before the court. Accordingly, there was no "clear error," and the motion for reconsideration is without merit. Nevertheless, because the court did not intend to prohibit Plaintiffs from curing the jurisdictional deficiency, the court will consider the motion in this light.

### III.    STANDARD OF REVIEW

Plaintiffs argue that the court erred by failing to use the more lenient standard of review required at the motion to dismiss stage. (Pls.' Supplemental Brief, 5) (Dkt. No. 84). Plaintiffs contend that because "the Bloxham declarations detail his visits to [the contested] areas and his stated intent to return," the court must accept the assertions as true. *Id.* To support their argument, Plaintiffs note that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (U.S. 1992) (internal citations omitted). Plaintiffs thereby imply that because the cases cited in the court's decision were not decided at the motion to dismiss stage, the court erred in relying on them. *See* (Pls.' Supplemental Brief, 5).

It is first important to properly understand the motion before the court. Because the court exclusively considered Plaintiffs' standing in its decision, the motion was one pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, and not Rule 12(b)(6). At first blush, the standards between the two are similar. The Supreme Court has stated that "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must

4

accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Selding*, 422 U.S. 490, 501 (1975). This pleading standard "does not require detailed factual allegations, but . . . [a] pleading that offers labels and conclusions . . . will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement . . . ." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Where Rule 12(b)(1) and 12(b)(6) motions differ, however, is that on a motion to dismiss for want of standing, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth*, 422 U.S. at 501. In explaining this duality of a Rule 12(b)(1) motion, the Tenth Circuit has stated:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve dispute jurisdictional facts under Rule 12(b)(1).

*Holt v. United States*, 46 F.3d 1000, 1002-04 (10th Cir. 1995) (citations omitted).

Insofar as Defendants have mounted a facial attack on the legal sufficiency of the complaint in pleading subject matter jurisdiction, the challenge was resolved by the typical motion to dismiss standard by accepting the allegations in the complaint as true. Based on this standard, Plaintiffs ultimately failed to carry their burden by pleading sufficient facts upon which a court could find that their members have suffered an injury-in-fact. *See Chamber of Commerce of the U.S. v. Edmonson*, 594 F.3d 742, 756 (10th Cir. 2010) (stating, "[t]o establish standing, plaintiffs bear the burden of demonstrating that they have suffered an injury-in-fact which is concrete and particularized as well as actual or imminent . . . .").

5

As discussed in the hearing, additional questions were raised as to whether Mr. Bloxham visited each of the individual leases during his visits. *See* Transcript of Oral Argument at 24-27 (Dkt. No. 85-1). Indeed, doubts were expressed whether the complaint could survive such a facial attack even permitting the previously excluded declarations. The questions raised in the hearing were not intended to impugn the integrity of Plaintiffs or their members. No one has suggested that they have lied or otherwise testified falsely in their declarations. But that does not mean that the declarations necessarily contain the factual information needed to adequately support this court's jurisdiction. *Contra* (Pls.' Supplemental Brief, 5). For this reason, the court permitted Plaintiffs to supplement the record with any additional information needed to establish standing. *See* (Dkt. No. 83). Despite providing additional affidavits, as explained *infra*, the court finds that Plaintiffs cannot survive a facial attack on the sufficiency of the pleadings and the evidence submitted.[3]

## IV.     INJURY-IN-FACT ANALYSIS

Particularly in light of Plaintiffs' agreement that the legal conclusions in the court's decision are correct, a full-standing analysis does not need to be reiterated. *See* Transcript of Oral Argument at 4-6, 16-17 (Dkt. No. 85-1). Let it suffice to say that it is incumbent upon Plaintiffs to allege or provide evidence of an injury-in-fact to Plaintiffs' members. In the environmental context, injury-in-fact occurs when "a plaintiff who has repeatedly visited a particular site, has imminent plans to do so again, and whose interests are harmed by a defendant's conduct . . . ." *Wilderness Soc'y v. Kane County*, 581 F.3d 1198, 1210 (10th Cir.

---

[3]  Because "evidence extraneous to the complaint" has been submitted, the court can appropriately "look to Rule 56 for guidance in ruling upon evidentiary matters under 12(b)(1)." *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987). Thus, even if Plaintiffs' evidence was sufficient to survive the facial attack, it is insufficient to survive Defendants' factual attack raised in the hearing. *See* Transcript of Oral Argument at 26 (Dkt. No. 85-1, 27) ("[The court] also asked whether Mr. Bloxham could [identify] the leases that he had hiked on. I don't know that he can."). Whatever ambiguities Plaintiffs believe exist, which they argue should have been resolved in their favor, have not been sufficiently fleshed-out in the supplemental briefing or in the evidence offered extraneous to the complaint.

2009). Because the court has already found the proffered injury to be legitimate, the question is simply whether the additional declarations show that the injury is concrete and particularized, as well as actual or imminent. *See id.*, at 1209-10.

### A. The Sufficiency of the Declarations

At the hearing held on March 4, 2011, the court gave Plaintiffs broad leave to take any action needed to correct the pleading deficiencies as previously noted by the court.[4] (Dkt. No. 83.) Plaintiffs have since submitted another declaration of Mr. Bloxham dated March 14, 2011 that summarizes his previous declarations with specific testimony that he has visited each of the leases, and notes them by number. (Pls.' Supplemental Brief, Ex. 1, 3.) With this addition, there are now three sets of declarations before the court, which will be considered individually.

First, Mr. Bloxham's previously submitted declaration, dated July 22, 2009, states that in May 2007 and May 2009 he "used and enjoyed . . . the public lands in the Circle Cliffs STSA and the Tar Sands Triangle STSA at issue in this litigation." (Pls.' Mem. Opp'n Defs.' Mot. Dismiss, Ex. I, 5-6) (Dkt. No. 60-2). Because these visits were made after the complaint was filed on April 2, 2007, the declaration was properly excluded.[5] *See SUWA*, 2010 U.S. Dist. LEXIS 121731, at *21-22.

The second set of declarations was attached to Plaintiffs' motion to amend. This set included two declarations from the administrative record and one from a document entitled

---

[4] Despite Defendants' assertion to the contrary as stated in their Request to Submit for Decision (Dkt. No. 85), it was the intent of the court to provide Plaintiffs leave to amend, supplement, or take any other action necessary to rectify their standing in this case. Plaintiffs' supplemental brief is properly before the court.

[5] Plaintiffs have stated that "the Court misinterpreted . . . that [Mr. Bloxham's] *only* visits to these places occurred *after* SUWA filed its complaint in April 2007." (Pls.' Mem. Supp. Mot. Am. J., 7.) It is not the court's role to divine what Mr. Bloxham meant. If the statement is said in context of "his *most recent* visits," then there is nothing but those most recent visits to base the standing analysis. *Id.* In any event, testifying to the particular geographic zones "at issue in this litigation" does not meet the pleadings standard, as explained *infra*. (Pls.' Mem. Supp. Mot. Am. J., Ex. 4, 5-6.)

7

"Opening Brief."[6] The first is a February 20, 2008 declaration by Ray Bloxham in which he testifies that he traveled "most recently in September 2006 to the Tar Sand Triangle STSA." (Pls.' Mem. Supp. Mot. Am. J., Ex. 1, 4) (Dkt. No. 72-1). His declaration further evidences that he "drove down the Flint Trail and . . . passed by Bagpipe Butte, Sewing Machine Pass, Elaterite Butte, Gunsight Butte, and The Block." *Id*. He also declared that on previous visits, he "camped on The Big Ridge . . ., [drove] the Poison Spring Canyon road to the North Hatch Canyon Road . . ., hiked around The Block, and [drove] the Doll House Road." *Id.* The second exhibit offered is a previous declaration by Mr. Bloxham dated February 7, 2008 in which he testifies that in June 2004 and February 2007 he visited the Circle Cliffs STSA. (Pls.' Mem. Supp. Mot. Am. J., Ex. 2, 4) (Dkt. No. 72-1). Specifically, he testifies that he "hiked in Little Death Hollow Canyon, drove the Wolverine Loop road, camped under the Circle Cliffs, and explored Moody and Middle Moody Canyons and Colt Mesa." *Id.* He further testifies that he also "explored the Pioneer Mesa and Studhorse Peaks proposed wilderness units."[7] *Id.*

---

[6] The Jan. 31, 2008 Bloxham declaration summarizes the September 2006 and June 2004 visits as declared in Exhibits 1 and 2. (Dkt. No. 16-5, Ex. 5; 72-2, Ex. 3). Exhibits 4-6 are excluded as irrelevant. *See* (Dkt. No. 72-2, Ex. 4-6). Exhibit 4 is another copy of the July 2009 Bloxham declaration excluded for the reasons stated previously. Exhibit 5 is the December 2010 Bloxham declaration in which he lists visits to the Tar Sands Triangle and the Circle Cliffs. In this declaration, Mr. Bloxham also states that he "viewed the oil and gas lease parcels at issue here" in both the Circle Cliffs and Tar Sands Triangle, but did so in context of the September 2009, September 2010, and December 2010 visits. Consideration of those visits is barred because they occurred after the filing of the complaint. Last is the November 2010 Hedden affidavit. Despite the fact that Plaintiffs' motion to amend was based on a contention that the court erroneously excluded declarations regarding only Mr. Bloxham, Mr. Hedden's affidavit does nothing to avail his standing deficiency. *See* (Pls.' Mem. Supp. Mot. Am. J., 2-4). The declaration states that since 1997, Mr. Hedden has visited the Tar Sands Triangle STSA and public lands at issue on three occasions. As stated below, this says nothing of the leases. Mr. Hedden also states that in 2004 he visited the leases at issue in the Tar Sands Traiangle STSA. Because the testimony is particular to the leases, the court accepts the testimony. For the reasons stated in the concreteness analysis, however, evidence of a singular visit is insufficient to prove an injury-in-fact.

[7] Although not intentionally excluded, the court notes that the January 31, 2008 Bloxham declaration was originally offered as an exhibit to a document entitled "Plaintiffs' Opening Brief," and not included in the pleadings. *See* Fed. R. Civ. P. 7(a). And it is in the pleadings that the jurisdictional grounds should be stated. *See* Fed. R. Civ. P. 8(a)(1). In any event, nothing on the docket suggests that Plaintiffs sought leave of the court to file an Opening Brief. Even if properly presented, however, the declaration would have had no impact on the court's holding. The failures would have been similar to those of Mr. Hedden and Mr. Nimkin's declarations, in that this declaration evidences singular visits to geographic areas that may or may not have specifically related to each of the leases at issue. "Accordingly, it cannot be said that [the declaration] provided evidence that there has been any 'repeated

In evaluating whether these declarations suffice, the court turns to the Supreme Court's decision in *Lujan* where it stated that "a plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly in the vicinity of it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 565-66 (1992). Even under the typical motion to dismiss standard, alleging that a member of Plaintiff organizations "used and enjoyed . . . the public lands in the Circle Cliffs STSA and the Tar Sands Triangle STSA at issue in this litigation" is not alone sufficient to establish any concrete harm without an averment that assures the court that injury will occur from each of the leases at issue.[8] The reason is because "the public lands . . . at issue in this litigation" span "tens of thousands of acres." (Am. Compl., 1) (Dkt. No. 32).[9] Such declarations are therefore too broad and encompassing by referencing the "vicinity" of the leases rather than the leases themselves. Without a more detailed pleading, general declarations relating to geographic areas without specifying the individual leases in those areas is insufficient. Any statement that the injury is thus concrete and imminent is conclusory.

The third set of declarations offered by Plaintiffs is the newly submitted March 14, 2011 Bloxham declaration, included in Plaintiffs' supplemental briefing. (Pls.' Supplemental Brief, Ex. 1) (Dkt. No. 84-1). This declaration provides a summary of the other declarations, and not

---

recreational use' of any of the particular areas in question." *S. Utah Wilderness Alliance*, 2010 U.S. Dist. LEXIS 121731, at *23.

[8] The court notes Plaintiffs' lack of care in their consolidated reply. Plaintiffs contend that the "several Bloxham declarations clearly demonstrate his repeated visits from 2004 to 2009 to the lands and leases at issue . . . . For example, in his February 2008 declaration . . . Bloxham stated that he most recently visited the leases in the Circle Cliffs STSA in June 2004 and February 2006 . . . ." (Pls.' Reply Mot. Amend., 5) (Dkt. No. 81). This assertion is not supported by the declaration. Mr. Bloxham testified only that he took "great pleasure from [his] visits to these areas . . . ." (Pls.' Mem. Supp. Mot. Am. J., Ex. 2, ¶6.) Mr. Bloxham stated no such thing regarding the leases.

[9] At oral argument, counsel for Intervenor-Defendant represented to the court that the Tar Sands Triangle is approximately 147,000 acres, and that the Circle Cliffs Special Tar Sands Area is approximately 138,000 acres – a total of approximately 285,000 acres or 445 square miles. Transcript of Oral Argument at 26 (Dkt. No. 85-1, 27). Counsel further represented that the 39 leases at issue comprise approximately 67,000 acres or 98 square miles. *Id.* The leases are less than one-quarter of the areas discussed in the declarations. Counsel for Plaintiffs did not dispute the information and in supplemental briefings have provided no further information on the size of the areas at issue in the litigation or the particular leases.

only states that each lease has been visited, but lists each by name. The failure of this declaration, however, is that the March 14, 2011 Bloxham declaration groups all of Mr. Bloxham's affidavits and visits together. This includes the July 22, 2009 declaration that evidences Mr. Bloxham's May 2007 and May 2009 visits. As stated previously, these visits cannot be considered because they were taken after the filing of the complaint. And because they were included, the court cannot ascertain whether any of the leases were visited prior to the filing of the complaint.[10] The declaration is, therefore, unhelpful.

### B. <u>Concreteness of Injury</u>

As mentioned, the declarations fail to show that Mr. Bloxham has visited each of the leases at issue in this litigation. Even assuming that the court could conclude that each of the leases had been previously visited prior to the filing of the complaint, Plaintiffs contention would still fall short. First, a single past visit is generally not sufficient to establish an injury. This court previously stated that "unless there is evidence of repetitious use of each of the specific lands in question, there cannot be a credible allegation of desired future use without specific concrete plans, and as such, no immediacy of harm." *SUWA*, 2010 U.S. Dist. LEXIS 121731, at *20 (internal citations omitted). *See also*, *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000) (stating that "repeated recreational use itself, accompanied by a credible allegation of desired future use, can be sufficient, even if relatively infrequent, to demonstrate that environmental degradation of the area is injurious to that person."). This court has also stated:

> [I]t seems that the appropriate standard to assert future injury is one that generally mirrors the specificity and concreteness of past performances . . . . [W]here the

---

[10] Although Mr. Bloxham references each lease by its identifying number, he also fails to provide any information as to when or during which of his previously referenced visits he "used and enjoyed" any of the specific leases. Without such a statement, there is nothing by which the court can presume that any of the leases were visited on multiple occasions.

10

past actions do not evoke a well-established trend, pattern, habit, or practice that can be relied upon with confidence regarding the specific site involved in this litigation, more particularity in the planning is required.

*SUWA*, 2010 U.S. Dist. LEXIS 121731, at *19.

Plaintiffs' allegations and evidences averring to multiple visits to any particular lease fails to meet this requirement.[11] Even if the court accepted that a lease had been visited more than once, nothing is alleged or otherwise shows that such visits "evoke a well-established trend, pattern, habit, or practice that can be relied upon with confidence regarding the specific site[s] involved in this litigation." *SUWA*, 2010 U.S. Dist. LEXIS 12173, at *19. More is needed to demonstrate that "this intention [to return] is not fleeting. *Id.* at *24.

### C. <u>Imminence of Injury</u>

Despite Plaintiffs' failure to allege or provide sufficient evidence of past use to support a finding of concreteness, Plaintiffs' injury-in-fact can still be maintained if they can allege or otherwise show a "high degree of immediacy." In cases such as this, the Supreme Court has required a "high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2. Courts have varied in what is necessary to show immediacy. Some courts have required detailed planning, while others have looked heavily to the temporal proximity of the alleged future harm. *See generally*, *SUWA*, 2010 U.S. Dist. LEXIS 121731, at *13.[12] In any event, Plaintiffs' failure in this case is more basic. *Id.* at *23. As noted in the court's decision, Mr. Bloxham, Mr. Hedden, and Mr. Nimkin testified that they would all "certainly" return to the various areas no later than July 20, 2010. *See* (Pls.'

---

[11] The only locations that could be construed to have been visited on more than one occasion in the Tar Sand Triangle area is The Block. Outside of this one location, there is significant ambiguity whether any of the Circle Cliffs STSA areas were visited more than once. Although Mr. Bloxham declares that he visited the general area on at least two occasions, the court cannot determine whether any particular area within the Circle Cliffs STSA was visited on multiple occasions, to say nothing of the leases. *See* (Pls.' Mem. Supp. Mot. Am. J., Ex. 2).

[12] This court stated that "when an injury is at least partly within the plaintiff's control, the reasonably fixed and specific time must be specified with greater precision, with such a date particularly close in time." *SUWA*, 2010 U.S. Dist. LEXIS 121731, at *21.

11

Mem. Opp'n Defs.' Mot. Dismiss, Ex. I, J, K) (Dkt. No. 60-2). And in that "the stated timetable for Members to make their return trips has lapsed . . . there is now no evidence that they ever intend to return." *SUWA*, 2010 U.S. Dist. LEXIS 121731, at *26. Indeed, nothing in the supplemental material before the court changes this outcome.[13] No allegation or evidence has been presented that demonstrates that Mr. Bloxham or any of the previously identified Members will ever return to the leases involved in this litigation in order to suffer his injury.[14] Without at least some allegation or evidence of a concrete and immediate plan to return, the court must conclude that their stated injury will never be realized. Accordingly, Plaintiffs do not have standing and the court lacks subject-matter jurisdiction.

## **CONCLUSION**

Plaintiffs have now filed a complaint, an amended complaint, an opening brief, an opposition to Defendants' motions to dismiss, and a motion for reconsideration. Plaintiffs have been given notice of their standing defects, an opportunity to be heard specifically on the issue,

---

[13] In both the hearing and in their supplemental briefing, Plaintiffs have again failed to allege or produce evidence of a future harm. In the hearing on this motion the court specifically raised this question with Plaintiffs. Transcript of Oral Argument at 6-16. In addition, the declarations simply conclude that future injuries will occur. *See* (72-3, Ex. 5, 2), (72-3, Ex. 6, 2). The court is not bound by a complaint's legal conclusions, deductions, and opinions couched as facts. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

[14] In response to Plaintiffs' inquiry during the hearing about the difference between standing and mootness as it relates to this case, the court will make several notes. Simply stated, "[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005) (internal citations omitted). What this means is that "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (citing *Arizonans for Official English*, 520 U.S. at 68, n. 22.). For the reasons stated, the court has found that Plaintiffs did not have standing at the outset of this litigation or at any point since.

Despite Plaintiffs' attempts to cure the jurisdictional deficiencies, the passing of time has created additional standing issues relating to the allegations of future injury which, as originally proffered, will now never be realized. Although these newer deficiencies may be accurately couched as mootness, it is unimportant because the mootness exceptions are inapplicable. Nothing suggests, for example, that "defendant's allegedly unlawful activity is capable of repetition, yet evading review," or that Defendants have "voluntarily ceased [some] illegal activity in response to litigation." *Friends of the* Earth, 528 U.S. at 190 (internal citations omitted). Indeed, theses exceptions are based upon the philosophy that "a party should not have to bear the consequences of an adverse ruling when frustrated by the vagaries of the circumstances." *Disability Law Ctr.*, 428 F.3d at 966. This is not the case here. Insofar as the injury has not spanned the length of the litigation, the failure is squarely upon Plaintiffs' shoulders. The mootness doctrine does not assist Plaintiffs.

and broad leave to supplement their briefings with anything needed to cure the deficiencies as articulated by the court in its previous decision. Despite these opportunities, however, Plaintiffs have ultimately supplemented parts of their argument while ignoring other fundamental flaws. Because Plaintiffs' standing still does not adequately appear from all materials of record, their motion to reconsider is therefore DENIED and the action DISMISSED for lack of jurisdiction.[15]

DATED this 4th day of April, 2011.

BY THE COURT:

_____

Clark Waddoups

United States District Judge

---

[15] "[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing . . . . If, after this opportunity [to supplement], the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Warth*, 422 U.S. at 501.